UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CYNTHIA RAE SHEARER, | ) | No. EDCV 15-557 AGR |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| CAROLYN W. COLVIN,<br>Commissioner of Social Security, | ) | |
| Defendant. | ) | |

Plaintiff Cynthia Rae Shearer filed this action on March 23, 2015. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 9, 11.) On September 29, 2015, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court affirms the decision of the Commissioner.

**I.**

## PROCEDURAL BACKGROUND

Shearer filed applications for disability insurance benefits and supplemental security income, and alleged an onset date of May 17, 2011. Administrative Record ("AR") 21, 206-25. The applications were denied initially and on reconsideration. AR 21, 80, 106. Shearer requested a hearing before an Administrative Law Judge ("ALJ"). AR 124-25. On June 18, 2013, the ALJ conducted a hearing at which Shearer and a vocational expert testified. AR 39-67. The record was held open for subpoenas to be issued for medical records. AR 21, 43, 66. After the hearing, however, additional evidence was received from the medical sources listed in the request for subpoena. Therefore, no subpoenas were necessary. AR 21. On August 13, 2013, the ALJ issued a decision denying benefits. AR 18-33. On January 22, 2015, the Appeals Council denied the request for review. AR 1-6. This action followed.

**II.**

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than

one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

## III.

## DISCUSSION

### A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and quotation marks omitted).

### B. The ALJ's Findings

The ALJ found that Shearer met the insured status requirements through June 30, 2013. AR 23. Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Shearer had the severe impairments of obesity; asthma; hypertension; diabetes mellitus; right shoulder impingement; bilateral hip bursitis; bilateral knee impairment; degenerative joint disease, left first metatarsophalangeal joint; heel spurs; obstructive sleep apnea with continuous positive airway pressure (CPAP) use; bilateral peripheral neuropathy; plantar fasciitis; degenerative disc disease of the lumbar spine; and chronic obstructive pulmonary disease. Her impairments did not meet or equal a listing. AR 23-24.

---

[1] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

The ALJ found that Shearer had the residual functional capacity ("RFC") to perform light work, except she could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand, walk and/or sit for six hours out of an eight-hour workday with regular breaks; occasionally climb ramps and stairs, balance, stoop, kneel, and crouch; and occasionally reach overhead with the right dominant upper extremity. She was limited to frequent foot controls bilaterally; no to rare crawling or climbing of ladders, ropes and scaffolds; occasional exposure to extreme cold, excessive vibration and environmental irritants such as fumes, dust, odors and gases; no to rare exposure to poorly ventilated areas; no to rare use of moving hazardous machinery; and no to rare exposure to unprotected heights. She required an assistive device for prolonged ambulation and ambulation on uneven terrain. AR 25. She was capable of performing past relevant work as a sales clerk and general office clerk. Alternatively, there were other jobs existing in the national economy that she could perform such as general cashier, information clerk and furniture window clerk. AR 30-32.

### C. Treating Physician

Shearer contends the ALJ erred in rejecting the opinion of Dr. Daka, a treating physician.

An opinion of a treating physician is given more weight than the opinion of non-treating physicians. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). To reject an uncontradicted opinion of a medically acceptable treating source, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Bayliss*, 427 F.3d at 1216. When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn*, 495 F.3d at 632 (citations and quotation marks omitted). "When there is conflicting medical evidence, the Secretary

must determine credibility and resolve the conflict." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002).

Dr. Daka completed a Multiple Impairment Questionnaire on May 13, 2013. AR 476-83. Dr. Daka indicated that she first treated Shearer on February 8, 2013, and most recently saw her on May 13, 2013. AR 476. She diagnosed asthma, COPD, OSA, obesity, HTN, DDD L-spine, DM-II, H/P, GERD, fatty liver, OA hips/knees, peripheral neuropathy, RCS right shoulder, urge incontinence, SOB, anxiety, and migraines. Shearer had moderately severe, chronic, constant pain in the knees, back, right foot and right shoulder. The pain was not completely relieved with medication without unacceptable side effects. AR 477-78. Dr. Daka stated that she reviewed Shearer's treatment records before filling out the questionnaire and that Shearer had "all the medical diagnoses mentioned in my 2/2013 visit for many years prior to establishing [care]" with her. AR 485.

Dr. Daka opined that Shearer could sit, stand and/or walk for 0-1 hours in an eight-hour day. Shearer must get up and move every 20 minutes for 10-15 minutes. AR 478-79. Shearer could occasionally lift and/or carry up to five pounds. AR 479. She had marked limitations on the right in grasping, turning or twisting objects; moderate limitations bilaterally in using her fingers/hands for fine manipulations; and marked limitations on the right and moderate limitations on the left in using her arms for overhead reaching. AR 479-80. Dr. Daka treated Shearer with medication. Shearer had physical therapy for her back and knee with no improvement. Shearer had left knee arthroscopic surgeries, three surgeries on the right foot, and right knee cortisone injection. AR 480. Dr. Daka opined that Shearer's symptoms would likely increase if she were placed in a competitive work environment. Shearer could not keep her neck in a constant position on a sustained basis. AR 480-81. Shearer's pain or other symptoms would frequently interfere with attention and concentration. She was incapable of even "low stress" jobs due to constant pain. She would need unscheduled

5

breaks every 15-20 minutes for 10-15 minutes.  AR 481.  She likely would be absent from work more than three times a month.  Shearer would need a job that permitted ready access to a restroom, and would need to avoid fumes, gases, temperature extremes, dust, heights, pushing, pulling, kneeling, bending and stooping.  Her symptoms and limitations apply as of May 11, 2011.  AR 482.  In a letter dated June 11, 2013, Dr. Daka stated that Shearer "is recommended to walk with a cane, to have/use her nebulizer for breathing treatment during the day with albuterol."  AR 484.

The ALJ did "not give great weight" to Dr. Daka's opinion because it was not supported either by the physician's clinical findings or by the medical evidence as a whole.  AR 30.

The ALJ could reasonably conclude that Dr. Daka's opinion was largely unsupported by her own objective findings.  An ALJ may reject a treating physician's opinion that is conclusory and inadequately supported by clinical findings.  *Bray v. Comm'r*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Batson v. Comm'r,* 359 F.3d 1190, 1195 (9th Cir. 2004).

A treatment note from the initial visit on February 8, 2013 notes Shearer's reported problems in the review of systems.  AR 30, 472.  Shearer reported weight gain due to lack of physical activity, shortness of breath on exertion due to severe COPD, wheezing on and off with relief from inhalers, dyspnea on exertion, mild edema in ankles – resolved with leg elevation, urinary frequency/urgency, joint stiffness, joint swelling, joint pain in back, knees and right shoulder, inability to lift arm over the shoulder, constant pain, mild relief with Advil, bilateral knee pain with limited mobility, ineffective cortisone injections, history of chronic low back pain with sciatica on right side, inability to do heavy lifting, and inability to sit for long periods due to pain in the back.  AR 472.  Dr. Daka noted that more than half of the 60-minute appointment was spent on counseling Shearer on her medical problems.  AR 473.

6

A treatment note on May 9, 2013 indicates Shearer came to follow up on labs and get the Social Security Disability form filled out. AR 474. Shearer complained of a cough and cold for the past two days. An examination revealed elevated blood pressure, cold symptoms, regular cardiovascular rate and rhythm, normal respiratory effort, lungs clear to auscultation bilaterally with no added sounds, and extremities with no edema and positive pin prick. *Id.* Shearer was diagnosed with hyperlipidemia, diabetes mellitus type II, hypertension and acute pharyngitis. AR 474-75. She was advised to follow a low fat diet and exercise, and given medication for her sore throat. Dr. Daka indicated she would consider changing Shearer's blood pressure medication at the next visit if her blood pressure was still high. AR 474.

A treatment note from May 13, 2013 indicates Shearer came for the Social Security Disability forms. AR 641. The note indicates Shearer's history of chronic pain in her back, knees and right foot, and her inability to get relief from pain. Shearer complained of neck pain if she looks at the computer for over an hour, and stiffness in her fingers if she does any activity for over an hour with her hands. *Id.* The examination indicated no distress, extremities with no edema, pin prick present, no cyanosis or deformities, no muscle atrophy, right knee tender joints with crepitus and very limited range of motion, left knee tender with crepitus and mildly limited range of motion, right shoulder tender with decreased range of motion to abduction and external rotation, back – no deformities, no spinal tenderness, no CVA tenderness, range of motion limited due to obesity, and swollen DIP and PIP joints in both hands. AR 642. Dr. Daka diagnosed COPD, obesity, degenerative joint disease of the lumbar spine with no evidence of spinal stenosis, urge incontinence, osteoarthritis of the knees, osteoarthritis of the hip, rotator cuff syndrome of the right shoulder, peripheral neuropathy of the right foot, primary osteoarthritis of the hand, and carpal tunnel syndrome. AR 643. More than half of the 60-minute appointment was spent counseling Shearer on her medical problems. "SSD form filled out to the best of my knowledge with pts help and after review of her old records available in the system." *Id.*

The ALJ could reasonably conclude that Dr. Daka's opinion was inconsistent with the medical evidence as a whole. Diagnostic imaging of Shearer's left knee in May 2011 after she fell in the kitchen and tripped in a parking lot revealed minimal osteoarthritic changes in the knee. AR 365. The x-ray imaging of her left foot showed calcaneal spurs, modest degenerative changes, and effusion of the distal interphalangeal joint. AR 366. In July 2011, physical examination of Shearer's bilateral feet revealed moderate vibratory loss in both knees, tactile loss in the plantar aspects of both feet, diminished proprioception in both feet, pain in the right and left tarsal and the sinus tarsi, and tenderness in the second and third interspaces of the right and left foot. AR 307, 366, 542. X-ray imaging of the left foot showed heel spurs and degenerative changes in the first metatarsophalangeal joint. AR 307, 366, 542. She was diagnosed with degenerative joint disease of the left first metatarsophalangeal joint, plantar heel spur, plantar fasciitis, peripheral neuropathy, and neuralgia. AR 307. She was prescribed Gabapentin for pain, but was unable to tolerate it. AR 307, 342. She was treated with corticosteroid injections in the left foot and dehydrated alcohol injections in the right foot, which provided slight pain relief. AR 336-37, 341-42, 465.

In August 2011, an orthopedic examination of her left knee showed patellofemoral crepitus, patella tracks and tenderness around the patellofemoral joint. AR 327-29. She had full range of motion of the left knee and no effusion, no sign of instability to varus or valgus testing, negative Lachman, anterior drawer, pivot shifting, posterior drawer, posterior sag sign and quadricepts active testing. McMurray's testing was positive over the medial compartments and the compression test was positive for a meniscal tear. X-ray imaging of the bilateral knees showed no patellar tilt or subluxation, and medial joint space narrowing with an ACI of 2.4. Shearer was diagnosed with osteoarthritis of the left knee, rule out medial meniscus tear. AR 328. She was prescribed a knee brace for support and was a candidate for left knee replacement. AR 554. Another examination in August 2011 demonstrated mild swelling of the left knee, mild bilateral knee crepitus, mild effusion with moderate joint

line tenderness, 5/5 strength testing, intact sensations, positive McMurray's and Apley's testing, and decreased range of motion. Shearer's gait was cautious but normal. She had bilateral PSIS tenderness of the lumbar spine and no paraspinal muscle spasm or trigger points. The remainder of the examination was normal. AR 353. Neurologically, Shearer had good coordination, no weakness or sensory deficit, and intact deep tendon reflexes. AR 354. She was treated with Naprosyn and advised to lose weight. AR 354. A September 2011 MRI scan of the left knee showed anterior cruciate ligament tear, chronic versus acute; subchondral edema noted at the tibial spine; meniscal myxoid degeneration without surfacing tear; and small joint effusion. AR 330-31.

Thereafter, Shearer did not return until April 2012. AR 28, 355. Shearer reported less pain in her left knee, but increased pain in her right knee due to a recent fall. AR 355. Her right knee showed positive medial joint line and mild plus one effusion with bilateral mild patella crepitation of both knee joints. She was to take Naprosyn and Flexeril at night. AR 356. X-ray imaging of her left knee showed mild medial knee joint space narrowing on weightbearing view, suggesting early osteoarthritis. AR 351. An MRI of the right knee showed small to moderate knee joint effusion, grade II/IV chondromalacia patella at the medial more than lateral patellar facets, blunting of the anterior free-edge of the posterior medial meniscus without a discrete meniscal tear, no marrow space signal alteration and no evidence of a stress response. AR 398-99.

A June 18, 2012 examination of Shearer's bilateral legs revealed that her gait was affected by neuropathy of bilateral lower extremities. She had bilateral loss of sensation to both lower extremities. AR 407.

However, on June 27, 2012, she had normal gait, limited range of motion of the right knee, 5/5 strength, intact sensation, and normal and symmetrical reflexes. AR 555. The remainder of the musculoskeletal examination was normal. X-rays of the pelvis showed arthritic mild right hip, moderate joint space narrowing on the right but not bone on bone, some osteophyte formation, and no soft tissue abnormalities. X-rays of the bilateral knees showed no abnormalities, although x-rays of the knees from the

previous year showed moderate to severe joint space narrowing in the medial compartment of the left knee, and minimal abnormality in the right knee. AR 556. Injections in the right knee did not help her pain. AR 558. Shearer was advised to attend physical therapy twice a week for four weeks. AR 559. In May 2013, Shearer reported no improvement in her symptoms. AR 574. She had limited range of motion of the right knee and tenderness with any motion of the hip and throughout the right lower extremity. AR 575. Regarding Shearer's lumbar spine, an MRI on May 19, 2011 revealed narrowing of the L4-5 and L5-S1 disc spaces with anterior spurring and subtle levoscoliotic curvature. AR 364. An April 11, 2012 examination of the lumbar spine revealed right worse than left PSIS tenderness, lumbar spine flexion 35 and extension zero, right/left pending 5/5, bilateral paraspinal muscle spasm or trigger points identified, symmetrical DTRs/no SLR, and normal neurovascular and sensory examination of bilateral lower extremities. AR 355-56. Diagnostic imaging on April 23, 2012 and April 30, 2012, demonstrated mild scoliosis, degenerative changes, and disc bulging. AR 350, 400, 579. An Employment Development Department Claim for Disability Insurance Benefits -- Doctor's Certificate indicated Shearer was incapable of performing her regular or customary work due to lumbago from May 7, 2011 through May 27, 2012. AR 290. Regarding Shearer's right shoulder, examination on August 8, 2011 showed pain with elevation of the right shoulder and positive impingement sign. AR 317, 320. On August 10, 2011, Shearer's right shoulder had a normal range of motion with mild impingement sign, positive Neer and no adhesive capsulitis. AR 353. On June 27, 2012, examination of the upper extremities did not show any tenderness, deformity or injury. Range of motion was unremarkable. There was no gross instability, and strength and tone were normal. AR 556. On August 5, 2012, Shearer's right shoulder showed pain with elevation, positive impingement sign and tenderness diffusely. AR 633. On May 13, 2013, Dr. Daka found right shoulder tenderness with decreased range of motion to abduction and external rotation. AR 642. Regarding

Shearer's sleep apnea, asthma, and chronic obstructive pulmonary disease, her conditions were generally controlled with medication and a CPAP machine. AR 456-57.

Dr. Daka adopted the findings set forth in Shearer's treatment records from other providers, such as an April 2012 MRI of the back, a June 2012 x-ray of the knees, a June 2012 and September 2012 CT of the abdomen and pelvis, a June 2012 chest x-ray, an October 2010 pulmonary function test, a January 2011 echocardiogram, a May 2012 stress echocardiogram, an October 2010 sleep study, and treatment notes from Dr. Wilson, Dr. Sheldon, Dr. Gustafson, and Dr. Durrant. AR 485.

Dr. Daka noted that she filled out the "SSD form" in part with Shearer's help. AR 643. Many of Shearer's subjective complaints at the May 13, 2013 appointment to fill out the SSD paperwork forms were reflected in the Multiple Impairment Questionnaire. AR 476-83, 641. The ALJ reasonably concluded that Dr. Daka's opinion was based in part on Shearer's subjective complaints. *See Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999) (ALJ may properly reject treating physician's opinion based on subjective complaints when ALJ properly discounts claimant's credibility); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ may discount treating physician's opinion that rehashes claimant's own statements).

The ALJ articulated specific and legitimate reasons, supported by substantial evidence in the record, for discounting Dr. Daka's opinion.

**D.     Credibility**

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).

Second, when an ALJ concludes that a claimant is not malingering and has satisfied the first step, "the ALJ may 'reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation omitted); *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter*, 806 F.3d at 493 (citation omitted). "'General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Id.* (citation omitted).

In weighing credibility, the ALJ may consider factors including: the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation." *Bunnell*, 947 F.2d at 346 (citing Social Security Ruling ("SSR") 88-13) (quotation marks omitted).[2] The ALJ may consider: (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies between a claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. *Thomas*, 278 F.3d at 958-59.

Shearer alleged that she was unable to work due to back pain, knee pain, foot pain, radiculopathy, neuropathy, right shoulder impingement, and obstructive sleep

---

[2] Social Security rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

apnea. AR 49. She testified that she could sit for 15 minutes, stand for 20 minutes, lift and/or carry under five pounds, had difficulty reaching with her right arm, and had problems gripping and grasping. AR 51, 54-55.

The ALJ found that Shearer's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of her symptoms were "less than fully credible." AR 26-27. The ALJ primarily relied on three reasons: (1) the objective medical evidence did not support Shearer's subjective complaints; (2) Shearer provided inconsistent information about her daily activities; and (3) Shearer's ability to fly to Chicago for a vacation in 2012 indicates that her alleged symptoms and limitations may not be as severe as alleged. AR 26-27.

### 1. Objective Evidence

The lack of objective medical evidence supporting the degree of limitation is a factor that an ALJ may consider in assessing credibility. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The ALJ found that the objective clinical and diagnostic findings did not support the degree of Shearer's allegations. AR 27.

The ALJ noted that the evidence indicated that Shearer's hypertension, diabetes mellitus, asthma, sleep apnea, and chronic obstructive pulmonary disease were essentially controlled with treatment. AR 460, 488, 491, 493-94, 497. Shearer argues that her diabetes caused lower extremity peripheral neuropathy that was not controlled, and her chronic obstructive pulmonary disease and asthma were not shown to be under control. The record does not support that Shearer's arguments. On August 10, 2011, Shearer was noted to have "significant diabetes, obesity and hypertension," and was advised to lose weight. AR 391. On February 27, 2012, Shearer's asthma was assessed as stable with inhalers. AR 494. On May 10, 2012, Shearer had normal breath sounds and good air movement. AR 488. Her wheezing subsided after treatment with a nebulizer. AR 435, 488. Her glucose was found to be 184, which was elevated, but she was not treated for diabetes. AR 435. On June 18, 2012, Shearer

showed a subject gait affected by neuropathy and bilateral loss of sensation to position of both lower extremities to the foot area and the plantar surface, and no position sense in all the toes. AR 407. On July 25, 2012, diabetes was noted in Shearer's past medical history. AR 561. On December 4, 2012, pulmonary testing indicated a mild obstructive lung defect that resulted in a mild decrease in diffusing capacity. AR 636. A "significant response to [a] bronchodilator" is noted. *Id.* On May 9, 2013, Shearer reported new onset diabetes, and reported that her wheezing was relieved with inhalers. AR 472, 474, 641.

The ALJ noted that physical examinations showed full range of motion of the upper extremities with no instability and normal muscle strength, despite Shearer's right shoulder impingement. AR 26. Shearer argues that the record indicates pain with elevation of the right shoulder with positive impingement sign and diffuse tenderness; right shoulder impingement; limited motion; and inability to lift arm over shoulder, with constant pain. AR 320, 354, 356, 407, 472. The ALJ acknowledged the August 8, 2011 examination showing pain with elevation of the right shoulder and positive impingement sign. AR 29, 320. Subsequent examinations revealed a normal range of motion of the shoulders with mild impingement and positive Neer testing. AR 353, 556. Shearer had full muscle strength and normal tone in the upper extremities, and showed no evidence of gross instability. AR 556. On May 13, 2013, Dr. Daka found right shoulder tenderness with decreased range of motion to abduction and external rotation. AR 642. The ALJ accounted for Shearer's right shoulder impingement by limiting her RFC to occasional overhead reaching with the right upper extremity. AR 25, 29. The ALJ noted that the treatment record did not suggest that Shearer required an assistive device at all times. AR 26, 254; *Tommasetti*, 533 F.3d at 1039. The ALJ noted that the record did not contain objective evidence of reduced grip strength. AR 26. Shearer did not challenge the ALJ's finding.

The ALJ identified sufficiently specific reasons, supported by evidence in the record, for discounting Shearer's statements.

2.  Activities of Daily Living

An ALJ may consider a claimant's daily activities when weighing credibility. *Bunnell*, 947 F.2d at 346. The ALJ found Shearer's daily activities inconsistent with her alleged symptoms and limitations. AR 26. The ALJ noted that Shearer testified that she prepares simple meals cooked in a crockpot, and she cannot stand for prolonged periods due to pain in her back. AR 26, 48, 52. She fixes lunch for her husband, and tries to do one task each day, such as doing the dishes or paying the bills. AR 48-49. She spends most of her day on the recliner or in bed. AR 48-49. She tries to attend a water aerobics class twice a week. AR 49. She can do the treadmill for a few minutes and take the dog for a short walk. AR 52-53. She can drive, but goes shopping on her own only if she has to do so. AR 50.

The ALJ found Shearer's daily activities inconsistent with an October 2011 treatment note indicating that she "spends all her time in the kitchen." AR 26, 341. The treatment note documents Shearer's complaints of continued right and left foot pain, and indicates Shearer was "having difficulty because she's a stay at home woman and spends all her time in the kitchen." AR 341. Shearer's testimony that she prepared simple meals, fixed lunch for her husband, and did the dishes is not necessarily inconsistent with spending a lot of time in the kitchen. The ALJ's reliance on this reason is not supported by substantial evidence.

3.  Airline Travel

The ALJ noted that Shearer's decision to fly to Chicago in 2012, after the alleged onset date, "tends to suggest that the alleged symptoms and limitations may not be as severe as alleged." AR 26-27. The ALJ cited an April 30, 2012 treatment note that indicated that "[r]ecently, while flying to Chicago[,] [Shearer] developed increasing pain of the right knee." AR 357. Apparently, Shearer twisted her right knee while in the aisle. AR 554. Before that flight, Shearer had complained of back, leg, foot and bilateral knee pain, and indicated that an aggravating factor of her pain was sitting. AR

496, 499-500, 509, 512, 516, 519, 521-22.  The ALJ properly considered Shearer's flight to Chicago after the alleged onset date.  *See, e.g.*, *Tommasetti*, 533 F.3d at 1040 (ALJ properly inferred from claimant's ability to travel to Venezuela that he was not as physically limited as he alleged); *see also Beck v. Astrue*, 303 Fed. Appx. 455, 458 (9th Cir. 2008) ("Claimant's out-of-state travels . . . contradicted her subjective complaints of pain and lack of mobility").

### 4. Conclusion

Although the ALJ erred in relying on Shearer's daily activities to discount her credibility, remand is not warranted because of the ALJ's "remaining reasoning and ultimate credibility determination."  *Carmickle v. Comm'r of the Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (italics omitted).  When, as here, an ALJ articulates specific reasons for discounting a claimant's credibility, reliance on an illegitimate reason(s) among others does not automatically result in a remand.  In light of the ALJ's valid reasons for discounting Shearer's credibility and the record as a whole, substantial evidence supported the ALJ's credibility finding.  *See Bray*, 554 F.3d at 1227 (error was harmless when record did not support one of four reasons for discounting credibility).  "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing."  *Thomas*, 278 F.3d at 959.

## IV.
## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: January 7, 2016

ALICIA G. ROSENBERG
United States Magistrate Judge